UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JUNHAO SU, | ) | CASE NO.  3:13 CV 1812 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | OPINION |
| | ) | |
| BOWLING GREEN STATE UNIV., | ) | |
| BOARD OF TRUSTEES, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff Junhao Su filed a complaint pursuant to: 1) Title VII of the Civil Rights Act

of 1964, as amended 42 U.S.C. § 2000e *et seq*.; 2) § 102 of the Civil Rights Act of 1991, 42 U.S.C.

§ 1981a; 3) Title VI of the Civil Rights Act, as amended, 42 U.S.C. § 2000 *et seq*.; and 4) 42 U.S.C.

§ 1983.  He names Bowling Green State University Board of Trustees (the Board),  Board Chief

Executive Officer Mary Ellen Mazey, and Board General Counsel Sean P. Fitzgerald as party

defendants.

Mr. Su alleges he was subjected to a discriminatory, hostile, and offensive work environment because of his nationality, and in retaliation for complaining about a protected activity in 2008, 2011, and 2013.  For the reasons set forth below, I dismiss his complaint.

I. BACKGROUND

During the summer and winter of 2008, Mr. Su filed two separate discrimination complaints with Bowling Green's Office of Equity and Diversity.  Copies of these complaints were also submitted to his advisor Julie Lengfelder and the Associate Dean of the College of Education. Mr. Su, who is a Chinese national, complained he was being treated less favorably than similarly situated students and employees because of his nationality.  In the letter to the Associate Dean, Mr. Su questioned Graduate Coordinator Dr. Geoffrey Meek's suitability for teaching, claiming he advised all Teaching Assistants to lower, by one letter, the grade of any student who sought to challenge his or her mark.  He also complained that another professor, Philip Xie, repeatedly stalked him and deliberately tried to aggravate him.[1]

On August 22, 2008, Mr. Su transferred to Florida International University (FIU) in Miami, Florida.  Although he claimed he was initially treated well,  the atmosphere shifted after Bowling Green allegedly advised FIU that he leveled accusations of discrimination against Bowling Green. Mr. Su believes this resulted in an increasingly hostile environment where his employment and study at FIU were eventually terminated in December, 2008.   Mr. Su subsequently returned to Bowling Green.

_____

[1] In April 2008, Mr. Su circulated an email to twenty-six individuals, including classmates and professors in his counseling program and three people he met outside of Bowling Green.  The message outlined his concerns about the conduct of Dr. Xie and Professor Meek.

-2-

The remaining facts and allegations regarding the treatment Mr. Su received at Bowling Green, until he "was constructively discharged by BGSU in early February 2010," are  recounted in the Order that I issued on August 14, 2012 dismissing a civil rights complaint Mr. Su filed in this Court on April 23, 2012. *See Su v. Bowling Green*, Case No.  3:12 CV 0975 (N.D. Ohio Apr. 23, 2012) (Carr, J.).[2]  Mr. Su's previous complaint included allegations that:

> From the fall of 2006 until the summer of 2008, Dr. Meek would allegedly "death stare at plaintiff" if their paths crossed.  Mr. Su believes Dr. Meek was "interested in talking with graduates of other national origins." (Am. Compl., at 2.) During this period, Mr. Su was placed under the supervision of Dr. Philip Xi.
>
> Mr. Su alleges that, on three separate occasions off of campus, Dr. Xi passed him from behind on the street without speaking, "waving hands, or nodding" at him. He also implies Dr. Xi may have stalked him in the Tech Lab at the city library, after he saw Dr. Xi enter the library and "pull[] the chair on the left corner with apparent anger." (Am. Compl., at 5.)  Moreover, Mr. Su alleges Dr. Xi snuck up to listen outside of Dr. Tabor's office door during a meeting between he and Dr. Tobar.  When Mr. Su left Dr. Tobar's office he encountered Dr. Xi who "started to laugh very loudly and maliciously until plaintiff walked out of that long corridor."  (Am. Compl., at 5.)  Bowling Green's Director, Dr. Bonnie Berger, then moved Mr. Su's work location from Dr. Tobar's office (which was near Dr. Xi) to the Sport Psychology Lab.  She also offered Mr. Su the use of her computer to work for Dr. Tobar.

*Id.* at 2-3.[3]

I also addressed Mr. Su's claims of retaliation as they related to an August 10, 2011 denial of a complaint he filed with Bowling Green's Office of Equity and Diversity; as well as, the nationality discrimination complaint he filed with the E.E.O.C. on October 21, 2011.  All relevant facts regarding Mr. Su's nationality discrimination claims against Bowling Green were addressed in my Order dismissing his complaint on August 14, 2012.

---

[2] Two days later, he filed an Amended Complaint to supersede the original.

[3] I note the spelling of the professor's surname should be "Xie," instead of "Xi."

Mr. Su now claims that, three days after I dismissed his complaint, Bowling Green's attorney FitzGerald "warned Su . . . against contacting any of its employees except FitzGerald." (Doc. 1, at 11.) FitzGerald also allegedly asked  the Sheriff's department in Illinois, where Mr. Su was residing with a friend, to personally warn Mr. Su against contacting Bowling Green.

On August 27, 2012, Bowling Green Police Detective Shumaker spoke with the mother of the friend with whom Mr. Su was residing.  She convinced Mr. Su to speak directly with the detective over the telephone.  When they spoke, he asked Mr. Su when he last attended Bowling Green, or any other university.  After refusing to answer any questions, Mr. Su claims the detective finally stated: " you have been illegally in the country! I will talk to the parole officer and ask them to talk to you, ok?" (Doc. 1, at 13.)  The  conversation ended at that point.

Mr. Su filed a civil conspiracy, Title VII, and Title VI retaliation complaint against Bowling Green and FIU's Boards of Trustee on December 3, 2012 in the United States District Court for the Southern District of Florida. *See Su v. Florida International Univ., et al.*, Case No. 1:12-cv-24265 (S.D. Fl. Dec. 3, 2012). He also filed a motion to proceed *in forma pauperis,* which was denied*.*  On appeal, however, the Eleventh Circuit granted him leave to proceed *in forma pauperis*.[4]

On January 2, 2013, agents from the Department of Homeland Security (DHS) confronted Mr. Su at the residence of his friend.  He was advised that he failed to comply with his visa status. The next day, the DHS issued a Notice to Appear  (NTA) to Mr. Su.  He claims his SEVIS (Student and Exchange Visitor Program) was cancelled by FIU in early 2009, but he attended Bowling Green

---

[4] Although the case was administratively closing during the pendency of the appeal, the district court granted Mr. Su's Motion to Re-Activate Case on January 23, 2014.

-4-

for five months thereafter.[5]

Mr. Su believes Bowling Green retaliated against him for alleging discrimination.  He suggests this retaliation included the dismissal of his IFP motion in Florida, harassment from the Bowling Green and Illinois police, and, finally, the issuance of an NTA from DHS.[6]

## II. STANDARD OF REVIEW

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A district court is required to dismiss an action under 28 U.S.C. §1915(e), however, if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. MarsCoffey*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to section 1915(e).

## III. DISCUSSION

In the first complaint Mr. Su filed in this court against Bowling Green, he alleged he was

---

[5] "SEVIS is the Internet-based system where DHS maintains information on SEVP-certified schools, as well as the international students who come to the United States to study in F or M status and attend those schools. SEVIS also maintains information on [Department of State]-designated visitor program sponsors and J-1 visa exchange visitor program participants." http://www.ice.gov/sevis/. The regulations governing the SEVIS program impose reporting requirements on schools with respect to matters such as changes of address, enrollment, discipline of immigrant students. *See* 8 C.F.R. § 214.3(g)(3).

[6] I presume the NTA was issued by the Bureau of Immigration and Customs Enforcement alleging Mr. Su failed to comply with the terms of his student visa after he left the University. *See* 8 U.S.C. §1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").

subjected to a discriminatory, hostile, and offensive work environment because of his nationality and in retaliation for complaining about a protected activity.  The relevant events in that complaint took place over the course of Mr. Su's academic tenure at Bowling Green, his subsequent transfer to FIU, and a brief return to Bowling Green.  The complaint included allegations of discriminatory treatment by Dr. Meek and Professor Xie.  All of these facts, including the filing of his October 2011 E.E.O.C. charge, occurred before Mr. Su filed his 2012 complaint in this court.  With the exception of his latest retaliation claim, Mr. Su's Title VII, 42 U.S.C. § 1981a, Title VI, and 42 U.S.C. § 1983 claims are barred by *res judicata*.

### A. *Res Judicata*

The doctrine of *res judicata* promotes judicial economy and protects litigants from the burden of relitigating claims and issues with the same parties.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).  Under *res judicata*, a final judgment on the merits of an action bars relitigation between the same parties or their privies on issues that were or could have been raised in that action. *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467 n.6 (1982); *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 197 (6th Cir. 1987).  To constitute a bar, there must be an identity of the causes of action that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action. *See State Mutual Life Assurance Co. of America v. Deer Creek Park*, 612 F.2d 259, 269 n.9 (6th Cir. 1979).

To dismiss a claim on *res judicata* grounds, four conditions must be met: 1) a final decision on the merits in the first action by a court of competent jurisdiction; 2) the subsequent civil action is between the same parties as the first action; 3) an issue or claim in the subsequent action was litigated or should have been litigated in the prior action; and 4) an identity of the causes of action.

-6-

*See, e.g., Hamilton's Bogarts, Inc. v. State of Michigan*, 501 F.3d 644, 650 n.4 (6th Cir. 2007).

Although *res judicata* is generally raised as an affirmative defense, I may raise the issue *sua sponte* under "special circumstances." *Arizona v. California*, 530 U.S. 392, 412 (2000); *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 757 (6th Cir. 2003); *Holloway Constr. Co. v. United States Dep't of Labor*, 891 F.2d 1211, 1212 (6th Cir.1989) (affirming a district court's *sua sponte* assertion of *res judicata* where the district court had decided the original case and adding that "a district court may invoke the doctrine of *res judicata* in the interests of, *inter alia*, the promotion of judicial economy"). The "special circumstance" recognized in *Arizona*, is when "a court is on notice that it has previously decided the issue presented." *Arizona*, 530 U.S. at 412.

I dismissed Mr. Su's first complaint on the merits in 2012. Furthermore, I specifically addressed all relevant factors to determine whether grounds existed to dismiss his complaint on the merits for failing to state a federal discrimination claim. Although Mr. Su is a Chinese national, his 2012 complaint failed to allege he was subjected to an adverse employment action or that he was otherwise qualified or that he was replaced by a person who was not a member of the protected class. *See, e.g.*, *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). The retaliation claim did not include any allegation that he suffered an injury after engaging in a protected activity. Because none of Mr. Su's allegations ever rose above speculation, I dismissed the 2012 complaint with prejudice.

The allegations in Mr. Su's current complaint are now against the "Bowling Green Board of Trustees," as opposed to "Bowling Green University." It is a distinction for which Mr. Su offers no difference. What is apparent, however, is the fact that Mr. Su repeats many of the same allegations he leveled against Bowling Green in the first complaint, and both complaints include relevant events that took place over the exact same time period. As with the first complaint, Mr. Su

recounts a series of allegations that never set forth an actionable federal claim for relief.

Mr. Su does not allege why he was prohibited from raising claims pursuant to 42 U.S.C. § 1981a, Title VI of the Civil Rights Act and 42 U.S.C. § 1983 against the Board of Trustees, Mary Ellen Mazey, and Sean P. Fitzgerald in the complaint he filed in 2012. Here, "the same transaction or connected series of transactions is at issue, . . . the same evidence is needed to support both claims, and . . . facts essential to the second were present in the first." *Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir.1990) (quoting *N.L.R.B. v. United Technologies* Corp., 706 F.2d 1254, 1260 (2d Cir.1983)). All elements necessary to dismiss a complaint based on *res judicata* have been met. Accordingly, my final judgment on the merits of Mr. Su's prior action "bars relitigation between the same parties or their privies on issues that were or could have been raised in that action." *Kremer v. Chemical Const. Corp.*,456 U.S. 461, 467 n.6 (1982).

### B. Retaliation

To the extent Mr. Su's current complaint includes events that occurred after I dismissed his first civil rights lawsuit, he fails to state a federal claim for relief. At best, it appears he is alleging Bowling Green is retaliating against him by "deporting him out the United States."

Title VII prohibits an employer from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an allegedly unlawful employment practice. 42 U.S.C. § 2000e-3(a). To sustain a claim of retaliation, Mr. Su would need to demonstrate: "(1) he engaged in protected activity, (2) the activity was known to the defendant, (3) [he] was subjected to materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action." *Harris v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010).

Mr. Su filed a second charge against Bowling Green with the E.E.O.C. on April 15, 2013 alleging retaliation for complaining about discriminatory treatment at Bowling Green.  Without question, the filing of an E.E.O.C. complaint is a protected activity under Title VII. *See Canitia v. Yellow Freight Sys*., 903 F.2d 1064, 1066 (6th Cir.1990).  That is the only element Mr. Su has satisfied, however, with regard to a retaliation claim.

The Supreme Court has explained that "[t]he text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish ... [his] protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Ssv. Med. Ctr. v. Nassar*,    U.S.    , 133 S. Ct. 2517, 2534 (2013).  Mr. Su concedes "FIU cancelled Su's SEVIS in early 2009." (Doc. 1, at 13.)  Moreover, he admits he is not discussing whether his immigration issue warranted the issuance of a NTA. Rather, Mr. Su argues he is challenging "BGSU's *motive* for reporting Su to DHS at that time." (Doc. 1, at 13 n.13.)

While Mr. Su may 'blame' the defendants for lawfully notifying the immigration authorities that he is no longer enrolled at Bowling Green, he cannot sustain this as a retaliation claim.  At the time Mr. Su filed the retaliation claim, he was no longer employed by Bowling Green and, therefore, cannot argue his deportation adversely effected his status as an employee at the University.  There is simply no causal connection between the filing of Mr. Su's E.E.O.C. charge in 2013 and any adverse employment action, when he was already constructively discharged from Bowling Green in 2010.  Accordingly, Mr. Su has failed to state a claim of retaliation.

CONCLUSION

Accordingly, Mr. Su's Motion to Proceed *in forma pauperis* is granted.  (Doc. 2.)  The Motion to Extend Time to Perfect Service of Summons is denied as moot. (Doc. 3.)  The complaint

-9-

is dismissed pursuant to §1915(e), with prejudice, based on *res judicata* and for failing to state a claim of retaliation.  I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[7]

        IT IS SO ORDERED.

S/James G. Carr
SR. UNITED STATES DISTRICT JUDGE

---

[7] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

-10-